# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STANLEY FILTER CO., LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-0182-CVE-FHM |
| ) | |
| WINGMASTER SALES, LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is defendant Wingmaster Sales, LLC's motion to dismiss (Dkt. # 24) plaintiff Stanley Filter Co., LLC's, complaint (Dkt. # 2) under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that this Court lacks personal jurisdiction over defendant, or, in the alternative, under Rule 12(b)(3), on the ground that venue is improper.

### I. Background

Plaintiff is a limited liability company organized and existing under the laws of Oklahoma, which maintains its principal place of business in Tulsa, Oklahoma. Dkt. # 2, at 1. Defendant is a limited liability company organized and existing under the laws of New Mexico, which maintains its principal place of business in Hobbs, New Mexico. Dkt. # 25-1, at 2. Plaintiff sells "downhole sand filters and oilfield services" and owns several trademarks it utilizes in its business Dkt. # 2, at 3-5. For the last twenty or twenty-five years, pursuant to a distributor sales agency agreement (the agreement), defendant distributed plaintiff's filtration products exclusively in the New Mexico and

north Texas markets. Dkt. # 24-2, at 2.[1] During this time, defendant routinely purchased plaintiff's products. Dkt. # 26-1, at 1. Plaintiff took defendant's orders in its home office and shipped them from its warehouse, both of which were (and still are) in Tulsa, Oklahoma. Id. at 1-2. In addition, defendant's representatives met with plaintiff's representatives in Tulsa at least "two or three times," including when one of defendant's representatives attended a two-day seminar that plaintiff hosted Dkt. # 24-1, at 2.

According to plaintiff, defendant "terminated the agreement" in 2016. Dkt. # 26-1, at 2. In its reply, defendant does not admit to terminating the agreement, but acknowledges that the parties' "business relationship" has been "terminated." Dkt. # 28, at 5. In responding to the Court's order to produce a copy of the agreement, however, affiant Richard Schlabach (sole member of defendant) states that the "agreement . . . was never terminated." Dkt. # 36-1, at 2.

On April 6, 2017, plaintiff filed this lawsuit, alleging that defendant is promoting, advertising, distributing, selling, or offering for sale, counterfeit goods that infringe on plaintiff's trademarks. Dkt. # 2, at 6. In its complaint, plaintiff brings claims for trademark counterfeiting and infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., false designation of origin and unfair competition pursuant to the Lanham Act, common law unfair competition, common law trademark infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Id. at 8-15. Defendant was served on April 24, 2017 via personal service. Dkt. # 7; Dkt. # 8. On June 16, 2017, plaintiff filed a motion for entry of default, which the

---

[1] The Court ordered both parties to produce a copy of the agreement (Dkt. # 33; Dkt. # 35), but each claims not to have it (Dkt. # 34; Dkt. # 36). Additionally, plaintiff states that the parties' relationship has spanned the "past twenty years," but defendant states that their relationship has spanned the past twenty-five years. Dkt. # 24-2, at 2.

Court Clerk granted. Dkt. # 10; Dkt. # 12. On August 24, 2017, defendant moved to set aside the Court Clerk's entry of default, and the Court granted defendant's motion. Dkt. # 19; Dkt. # 22. Defendant now moves (Dkt. # 24) to dismiss plaintiff's complaint.

## II. Defendant's Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that this Court lacks personal jurisdiction over defendant, or, in the alternative, under Rule 12(b)(3), on the ground that venue is improper. Dkt. # 24.

### A. Personal Jurisdiction

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent that a defendant's affidavit does not controvert them. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. Id.

For a court to exercise personal jurisdiction over a nonresident defendant, plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. at 1247 (quoting Burger King, 471 U.S. at 472). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. at 1247 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16, n.9 (1984)).

In the Tenth Circuit, specific jurisdiction requires a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum State are such that he

should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). If such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091).

### i. Minimum Contacts

In assessing whether it has specific jurisdiction over a defendant, a court must first "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091).[2] "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant [itself] that create a substantial connection with the forum state.'" OMI Holdings, 149 F.3d at 1091 (citing Burger King, 471 U.S. at 472; Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)).

Defendant argues that plaintiff fails "to demonstrate any showing of intentional acts aimed at [Oklahoma]," or "injuries derived from any acts aimed at [Oklahoma]." Dkt. # 24-1, at 8. In response, plaintiff contends that defendant purposefully directed its activities at an Oklahoma resident in that, over the past twenty years, defendant purchased products from plaintiff's office in Tulsa (which were shipped from plaintiff's warehouse in Tulsa) and met with plaintiff multiple times in Tulsa. Dkt. # 26, at 7. In addition, plaintiff asserts, its claims against defendant arise from

---

[2] Because the Court decides the issue of personal jurisdiction under the doctrine of specific jurisdiction, it need not reach defendant's argument concerning general jurisdiction. Dkt. # 24-1, at 6-7.

defendant's Oklahoma contacts because they center on defendant's alleged counterfeiting of the products that defendant legally purchased from plaintiff for over two decades. Id. In its reply, citing no law, defendant argues that its contacts with plaintiff during "the course of their contractual relationship" are unrelated to plaintiff's claims because plaintiff alleges that defendant, acting entirely on its own, sold counterfeited products in the New Mexico and north Texas markets exclusively. Dkt. # 28, at 3.

Plaintiff has met its burden of establishing that defendant had sufficient minimum contacts with Oklahoma. Defendant deliberately and intentionally entered into a business relationship with plaintiff, a Tulsa company, which spanned at least two decades, and in the course of that relationship defendant regularly placed orders with, and visited, plaintiff's office in Tulsa. As such, defendant should have reasonably anticipated being haled into court in Oklahoma. In addition, plaintiff's claims arise from defendant's Oklahoma contacts; plaintiff alleges that defendant is now counterfeiting the products that defendant formerly purchased from plaintiff and distributed in an authorized fashion.[3] The Court, therefore, finds that plaintiff has satisfied its burden of establishing that defendant had sufficient minimum contacts with Oklahoma.

---

[3] Moreover, defendant provides, and the court sees, no basis for its argument that its contact with plaintiff during the course of their contractual relationship is somehow unrelated to the instant jurisdictional analysis. Just because plaintiff's claims allege that defendant is unilaterally engaging in unauthorized conduct does not mean that these claims do not arise out of the parties' prior, authorized business relationship; they do. Additionally, in responding to the Court's order to produce a copy of the agreement, Richard Schlabach (sole member of defendant), states that "the agreement . . . was never terminated," thereby implying, contrary to defendant's argument, that the parties' contractual relationship is still ongoing. Dkt. # 36-1, at 2.

### ii. Fair Play and Substantial Justice

Where, as here, the court finds that a defendant had sufficient minimum contacts with the forum state, the Court must then "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091). The touchstone of this analysis is whether the exercise of personal jurisdiction would be "reasonable." Id. The determination of reasonableness "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." Id. at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiff's chosen forum;" "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws

or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097). The fifth factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

Defendant argues that it would be unreasonable for the Court to exercise personal jurisdiction over it because "[i]t does not market, sell, or otherwise have any presence within Oklahoma." Dkt. # 24-1, at 8. Moreover, defendant argues, its burden to demonstrate unreasonableness is low, since plaintiff's showing of minimum contacts is weak. Dkt. # 28, at 3. Specifically, defendant contends that (1) litigating the case in the Northern District of Oklahoma would place a heavy burden on it, as defendant's principal place of business is over 500 miles away; (2) none of the acts plaintiff alleges have a nexus to Oklahoma, and the state therefore has little interest in resolving the dispute; and (3) "all of the witnesses that could attest to any alleged infringing activities would be contained in Texas and New Mexico." Dkt. # 28, at 3-4.

In response, plaintiff argues that the fact that defendant has had a two-decade long business relationship with plaintiff places a "heavy burden" on defendant to show that it would be unreasonable for the Court to exercise jurisdiction over it. Dkt. # 26, at 8 (quoting Phoenix Energy

Mktg., Inc. v. Chase Oil Corp., 2017 WL 2347188, at *7 (N.D. Okla. May 30, 2017)). Additionally, plaintiff argues that (1) litigating the case in the Northern District of Oklahoma places little burden on defendant, as New Mexico neighbors Oklahoma and defendant has previously traveled to the state for business; (2) Oklahoma has an interest in resolving the dispute because plaintiff, an Oklahoma company, alleges that defendant, a New Mexico Company, has injured it; (3) plaintiff has a significant interest in convenient and effective relief and should not be made to follow a trademark infringer wherever it may reside; and (4) litigating the case in Oklahoma best serves the interstate judicial system's efficiency interest because plaintiff's witnesses, who will testify to the nature of the agreement and plaintiff's trademarks and infringed products, are in Oklahoma. Id.

The Court's exercise of personal jurisdiction over defendant would not offend fair play and substantial justice. Contrary to defendant's assertion, its contacts with Oklahoma are not weak—defendant was engaged in an ongoing business relationship with plaintiff, an Oklahoma corporation, for at least two decades. Accordingly, defendant faces a heavy burden to demonstrate that it would be unreasonable for the Court to exercise jurisdiction over it. And, for the reasons that follow, defendant fails to meet this burden under the Tenth Circuit's five-factor test.

First, Oklahoma is not a distant forum for defendant; the state is adjacent to New Mexico, and defendant has traveled here for business multiple times. Second, Oklahoma has a clear interest in resolving this dispute. Plaintiff, an Oklahoma company, is alleging that defendant, an out-of-state actor, caused it to suffer financial injuries, and Oklahoma has "an important interest in providing a forum in which its residents can seek redress for injuries that out-of-state actors" cause. OMI Holdings, 149 F.3d at 1096. Third, plaintiff has an interest in convenient and effective relief; defendant voluntarily entered into a business relationship with plaintiff, and plaintiff should not be

9

made to follow defendant in order to seek redress for injuries arising out of the parties' business relationship. And fourth, litigating the case in Oklahoma best serves the interstate judicial system's efficiency interest because plaintiff's claims center on trademark infringement and, as plaintiff attests, plaintiff's witnesses who will testify as to the trademarks and the nature of the allegedly infringed products are in Oklahoma.[4] Based on the above, and because defendant provides no reason for the Court to believe that exercising personal jurisdiction over it would be unreasonable, the Court finds that exercising personal jurisdiction over defendant does not offend fair play and substantial justice.

Accordingly, as defendant had sufficient minimum contacts with Oklahoma, and the Court's exercise of personal jurisdiction over defendant is reasonable, the Court holds that it has specific jurisdiction over defendant, and defendant's motion to dismiss (Dkt. # 24) plaintiff's complaint under Rule 12(b)(2) for lack of personal jurisdiction is, therefore, **denied**.

## B. Venue

Defendant's motion to dismiss (Dkt. # 24) for improper venue falls under Fed. R. Civ. P. 12(b)(3). Once a defendant raises an issue as to venue, the plaintiff bears the burden to show that venue is proper. McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001). When venue is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the plaintiff must make only a prima facie showing that venue is proper in its chosen forum. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988). On a Rule 12(b)(3) motion, the Court may

---

[4] Neither party argues that litigating this case in either New Mexico or Oklahoma would advance a fundamental substantive social policy. The Court, therefore, does not address this factor.

10

consider matters outside the pleadings, and facts alleged in the complaint are taken as true to the extent that defendant's evidence does not controvert them. Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998). The Court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

> Under 28 U.S.C. § 1391(b), a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1391(b)(2) does not require that a court determine which judicial district has the most substantial connection to the case but, instead, venue may be proper in multiple districts as long as a substantial part of the events or omissions giving rise to the case occurred in those districts. Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1165-66 (10th Cir. 2010). When determining whether venue is proper under § 1391(b)(2), a district court must "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims," and "whether substantial 'events material to those claims occurred' in the forum district." Id. at 1166 (citations omitted).

Defendant argues that it has "not conducted any activities, nor has it directed its activities in this District or any other judicial district in Oklahoma." Dkt. # 24-1, at 11. In addition, as it argued with respect to personal jurisdiction, defendant contends that its past contacts with plaintiff, during the course of the parties' contractual relationship, are irrelevant for the purpose of venue

11

analysis, since plaintiff's claims allege that defendant, unilaterally, counterfeited plaintiff's products and sold them in the New Mexico and north Texas markets exclusively. Dkt. # 28, at 5. In response, plaintiff argues that venue is proper in the Northen District of Oklahoma because, over the last two decades, defendant properly bought products from plaintiff's office in Tulsa, which products plaintiff claims defendant is now counterfeiting. Therefore, a substantial part of the events that form the basis of plaintiff's lawsuit took place in this district. Dkt. # 26, at 10.

Venue is proper in the Northern District of Oklahoma. Defendant's argument that is has not conducted any activities in Oklahoma is illogical: defendant admits that it has purchased products from plaintiff's office on a regular basis, and visited plaintiff's office multiple times, over the course of the last twenty-five years. And the Court rejects defendant's argument that its past contacts with plaintiff are irrelevant to the instant venue analysis for the same reasons the Court rejected this argument with respect to personal jurisdiction.[5] Clearly, a substantial part of the events that form the basis of plaintiff's lawsuit took place in Tulsa—it is the city where, for over two decades, defendant purchased the very products that plaintiff alleges defendant is now counterfeiting. Accordingly, the Court finds that venue is proper in the Northern District of Oklahoma and defendant's motion to dismiss (Dkt. # 24) plaintiff's complaint under Rule 12(b)(3) for improper venue is, therefore, **denied**.[6]

---

[5] See supra note 3.

[6] Because the Court finds that it has personal jurisdiction over defendant and that venue is proper in the Northern District of Oklahoma, it does not reach plaintiff's arguments that (1) defendant waived its objections to personal jurisdiction (Dkt. # 26, at 10); and (2) defendant's motion to dismiss was "fatally flawed" because the affidavit of Richard Schlabach (which the motion relied on) does not state that the facts asserted therein are "true and correct" (Dkt. # 26, at 12).

**IT IS THEREFORE ORDERED** that defendant's motion (Dkt. # 24) to dismiss plaintiff's complaint is **denied**.

**DATED** this 7th day of November, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE