# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STANLEY FILTER CO., LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-CV-0182-CVE-FHM |
| | ) |
| WINGMASTER SALES, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is plaintiff Stanley Filter Co., LLC's, motion for leave to file a first amended complaint (Dkt. # 40). Plaintiff seeks leave to amend its complaint in order to "add [defendant's] principal, Richard Schlabach, on theory of personal liability for all counts." Id. at 1.

### I. Background

Plaintiff is a limited liability company organized and existing under the laws of Oklahoma. Dkt. # 2, at 1. Defendant is a limited liability company organized and existing under the laws of New Mexico. Dkt. # 40, at 3. Plaintiff sells "downhole sand filters and oilfield services" and owns several trademarks it utilizes in its business. Dkt. # 2, at 3-5. For the last twenty or twenty-five years, pursuant to a distributor sales agency agreement (the agreement), defendant distributed plaintiff's filtration products exclusively in the New Mexico and north Texas markets. Dkt. # 24-2, at 2.[1] During this time, defendant routinely purchased plaintiff's products. Dkt. # 26-1, at 1. Plaintiff took defendant's orders in its home office and shipped them from its warehouse, both of which were (and

---

[1] The Court ordered both parties to produce a copy of the agreement (Dkt. # 33; Dkt. # 35), but each claims not to have it (Dkt. # 34; Dkt. # 36). Additionally, plaintiff states that the parties' relationship has spanned the "past twenty years," but defendant states that their relationship has spanned the past twenty-five years. Dkt. # 24-2, at 2.

still are) in Tulsa, Oklahoma. Id. at 1-2. In addition, defendant's representatives met with plaintiff's representatives in Tulsa at least "two or three times," including when one of defendant's representatives attended a two-day seminar that plaintiff hosted. Dkt. # 24-1, at 2.

According to plaintiff, defendant "terminated the agreement" in 2016. Dkt. # 26-1, at 2. In an earlier filing, defendant acknowledged that the parties' "business relationship" has been "terminated." Dkt. # 28, at 5. In responding to the Court's order to produce a copy of the agreement, however, affiant Richard Schlabach—sole member of defendant—states that the "agreement . . . was never terminated." Dkt. # 36-1, at 2. In addition, he states,

> I remember an oral agreement with Jerry Dobbs, [plaintiff's] original sales manager, going back to 1990 in which I covered the four producing counties of the far Southeast corner of New Mexico and a region in West Texas North of the Midland-Odessa area.
>
> On two occasions after Jerry Dobbs left [plaintiff] I was approached by Howard Kennedy, the sales manager who replaced him, and we agreed that my sales area would be expanded to cover all of New Mexico and Texas.

Id. at 1-2. According to John Morton, president of plaintiff, "[defendant] through its principal, Rick Schlabach, was an authorized sales distributor for [plaintiff] when I started working at [plaintiff] in 1995." Dkt. # 34-1, at 1.

On April 6, 2017, plaintiff filed this lawsuit, alleging that defendant is promoting, advertising, distributing, selling, or offering for sale, counterfeit goods that infringe on plaintiff's trademarks. Dkt. # 2, at 6. In its complaint, plaintiff brings claims for trademark counterfeiting and infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., false designation of origin and unfair competition pursuant to the Lanham Act, common law unfair competition, common law trademark infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Id. at 8-15. Defendant was served on April 24, 2017 via personal

2

service. Dkt. # 7; Dkt. # 8. On June 16, 2017, plaintiff filed a motion for entry of default, which the Court Clerk granted. Dkt. # 10; Dkt. # 12. On August 24, 2017, defendant moved to set aside the Court Clerk's entry of default, and the Court granted defendant's motion. Dkt. # 19; Dkt. # 22. On September 7, 2017, defendant filed a motion to dismiss plaintiff's complaint (Dkt. # 24), which the Court denied. Dkt. # 37. Pursuant to the Court's scheduling order, the discovery deadline is February 20, 2018, and dispositive motions are due by March 26, 2018. Dkt. # 30.

Plaintiff now moves for leave to file a first amended complaint to "add [defendant's] principal, Richard Schlabach, on theory of personal liability for all counts." Dkt. # 40, at 1. Defendant has filed a response opposing this motion. Dkt. # 44.[2]

## II. Standard of Review

Under Fed. R. Civ. P. 15(a)(2), after the opposing party has served a responsive pleading, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Minter v. Prime Equipment Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The decision to grant leave to amend is within the discretion of the district court but, when leave is sought, it should be "freely given when justice so requires." Bradley v.Val-Majias, 379 F.3d 892, 900-91 (10th Cir. 2004). Leave to amend may be denied if the proposed amendment would be futile and would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc., 175 F.3d 848, 859 (10th Cir. 1999). Denial of a motion to amend may also be appropriate if the moving party unduly delayed in seeking leave to amend and has no adequate explanation for the delay. Minter, 451 F.3d at 1206. "In the Tenth Circuit, untimeliness

---

[2] In its response to plaintiff's motion, defendant requests, should the Court grant plaintiff's motion, that the Court "impose costs as a condition of granting leave to amend." Dkt. # 44, at 9. Defendant provides no justification for this request, and it is **denied**.

3

alone is an adequate reason to refuse leave to amend." Duncan v. Manager, Dept' of Safety, City and County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005).

### III. Plaintiff's Motion to Amend

Plaintiff seeks leave to amend to "add [defendant's] principal, Richard Schlabach, on theory of personal liability for all counts." Dkt. # 40, at 1. Plaintiff argues that the Court should grant it leave to file its proposed amended complaint because (1) defendant will suffer no prejudice, as it has "yet to file its answer, [and] discovery has not yet commenced;" (2) "the proposed amendment is not futile because [plaintiff] in its proposed Amended Complaint, pleads facts sufficient to state a claim against Schlabach individually for vicarious liability for trademark infringement;"[3] (3) "courts routinely exercise of [sic] personal jurisdiction over corporate officers who actively and personally involved themselves in conduct violating the Lanham Act, notwithstanding the fact that the defendants acted as agents when they did so;" and (4),

> Schlabach states in his Declaration that 'I remember an oral agreement in which I covered the four producing counties . . .' and that 'I was approached by . . . the sales manager of [plaintiff], and we agreed that my sales area would be expanded to cover all of New Mexico and Texas . . . .' Schlabach goes on to allege that 'the agreement . . . was never terminated . . . .' As such, if Schlabach was personally a party to the distributor agreement, he is individually liable for the contractual breaches with [plaintiff].

Id. at 4-5.

Defendant responds that the Court should deny plaintiff's request for leave to file its proposed amended complaint because (1) plaintiff has waited 224 days after it filed its complaint to move to amend, Dkt. # 44, at 1; (2) given the two-decade business relationship plaintiff alleges

---

[3] In its proposed amended complaint, plaintiff states, "Schlabach, as [defendant's] agent, and upon information and belief, as its employee, manager and member, was directly and personally involved in all of [defendant's] conduct alleged herein." Id. at 9.

4

it shared with defendant, plaintiff should have had the "knowledge . . . to have alleged that proposed Defendant Schlabach be a proposed Defendant from the very beginning," and plaintiff "has not given any plausible reason why the claims were not raised earlier . . . ." Id. at 2, 5 (internal quotations omitted); (3) untimeliness alone is a sufficient reason to deny leave to amend, Id. at 6; (4) plaintiff's proposed amended complaint does not allege that Schlabach "engaged in intentional misconduct or a knowing violation of law . . . ." Id. at 7; and (5),

> . . . any claims against the proposed Defendant Schlabach would be barred by the applicable statutes of limitation. The plaintiff states that [defendant] was organized in 2005 . . . . Now, after having an ongoing business relationship for many years with [defendant], which the Plaintiff alleges was terminated in the amended complaint . . . the plaintiff curiously seeks to assert claims for alleged activities taking place well over a decade ago.

Id. at 8.

### i. Defendant's Arguments

As an initial matter, none of defendant's arguments opposing plaintiff's motion for leave to amend has merit. With respect to timeliness, defendant repeatedly states that the Court should deny plaintiff leave to amend because it has been 224 days since plaintiff filed its complaint, and plaintiff has provided no justification for this delay. But defendant fails to explain, and the Court see no reason, why defendant will suffer any prejudice should the Court grant plaintiff leave to amend.[4] In addition, defendant states that plaintiff's proposed amended complaint fails to allege that Schlabach engaged in intentional misconduct. This is simply inaccurate; plaintiff's complaint clearly alleges

---

4 As plaintiff points out, discovery has not yet been conducted in this case (which is surprising given the February discovery deadline). And one of the reasons that there has been 224 days between plaintiff's complaint and the instant motion is because defendant initially failed to plead or otherwise defend against plaintiff's complaint, and the Clerk of this Court entered an entry of default against defendant (Dkt. # 12), which was set aside.

5

that defendant knowingly and intentionally engaged in counterfeiting and infringing activities and that "Schlabach . . . was directly and personally involved in all of [defendant's] conduct alleged herein." Dkt. # 40-1, at 8-9. Finally, defendant's statute of limitations argument fails because plaintiff's proposed amended complaint seeks to hold Schlabach personally liable as "defendant's agent" and alleges that defendant's counterfeiting and infringing activities are ongoing.

**ii. Lanham Act and Common Law Trademark Infringement and Unfair Competition**

Regarding whether a corporate officer may be personally liable for Lanham Act and common law claims for trademark infringement and unfair competition, as a district court from within the Tenth Circuit recently stated, "[t]his Court has not found any controlling Tenth Circuit precedent." Swig Holdings, LLC, v. Sodalicious, Inc., 2016 WL 2637823, at *2 (D. Utah May 6, 2016). Nor has this Court found any controlling Oklahoma authority for the common law claims. As the Swig Court observed, however, there is ample authority from other circuits holding that an "'officer or employee'" of a corporation is "'personally liable'" if he or she "'actively and knowingly caused the infringement.'" Id. (quoting Chanel, Inc. v. Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)); see also, e.g., Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 149 (4th Cir. 1987) ("A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in trademark infringement and unfair trade practices cases); Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp., 97 F.Supp.3d. 485, 501 (S.D.N.Y. 2015) ("A corporate officer is liable for trademark infringement if he directs, controls, ratifies . . . or is the moving force behind the

infringing activity).[5] And the Tenth Circuit has held that "[u]nder Oklahoma law, an officer may be held liable for the torts that he personally commits." Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett, 24 F.3d 136, 141 (10th Cir. 1994) (construing Oklahoma law); see also MTG Guarnieri Mfg., Inc. v. Clouatre, 239 P.3d 202, 214 (Okla. Civ. App. 71 2010) ("[A] manager of a limited liability company is liable for 'acts or omissions not in good faith or which involve intentional misconduct . . . .'") (quoting Okla. Stat. tit. 18 § 2017(B)(2)); Preston-Thomas Const., Inc. v. Cent. Leasing Corp., 518 P.2d 1125, 1127 (Okla. Civ. App. 1973) ("The law will not permit an officer or director to escape personal responsibility for his corporation's intentional malfeasance . . . .").

Plaintiff's proposed amended complaint alleges that defendant—by and through Schlabach, its principal and sole member—is knowingly and intentionally counterfeiting plaintiff's trademarked products. In other words, plaintiff's proposed amended complaint alleges that Schlabach, though acting on behalf and for the benefit of defendant, is actively and knowingly causing the alleged infringement. And defendant offers no meritorious reason why the Court should deny plaintiff's request to amend its complaint to add Schlabach as a defendant with respect to plaintiff's claims for trademark infringement and unfair competition. Accordingly, plaintiff's motion for leave to file a first amended complaint (Dkt. # 40) to add Schlabach on a theory of personal liability is **granted** with respect to count one (Lanham Act trademark infringement), count two

---

[5] As one leading commentator states, courts are particularly likely to find that a corporate officer may be personally liable for trademark infringement and unfair trade practices where the officer is the "sole proprietor" of the infringing corporation. J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed. 2013) (collecting cases).

(Lanham Act unfair competition), count three (common law unfair competition), and count four (common law trademark infringement) of plaintiff's proposed amended complaint.

### iii. Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment

Unlike plaintiff's proposal to add Schlabach as a defendant with respect to counts one through four of its proposed amended complaint (i.e. plaintiff's Lanham Act and common law trademark and unfair competition claims), plaintiff's proposal to add Schlabach as a defendant with respect to count five (breach of contract), count six (breach of implied covenant of good faith and fair dealing), and count seven (unjust enrichment) would be futile. Although plaintiff points to statements from Schlabach that plaintiff argues indicate he was a party to the agreement between plaintiff and defendant,[6] plaintiff's own affiant John Morton, president of plaintiff, states, "defendant through its principal, Rick Schlabach, was an authorized sales distributor for [plaintiff] when I started working at [plaintiff] in 1995." In other words, by plaintiff's own admission, the agreement at issue in this case was between defendant—not Schlabach—and plaintiff as of 1995. And plaintiff presents no argument as to how Schlabach might be personally liable for breaching a contract to which he was not a party. Likewise, plaintiff presents no argument as to how Schlabach might be personally liable for breach of the agreement's implied covenant of good faith and fair dealing (which plaintiff assumes even exists in this scenario) and unjust enrichment.

Accordingly, because plaintiff's own affiant stated that the agreement was between plaintiff and defendant, and plaintiff presents no arguments as to how Schlabach—as a non-party to the agreement—would be personally liable for breach of contract, breach of the implied covenant of

---

[6] See supra at 4.

good faith and fair dealing, and unjust enrichment, plaintiff's motion for leave to file a first amended complaint (Dkt. # 40) to add Schlabach on a theory of personal liability is **denied** with respect to count five (breach of contract), count six (breach of implied covenant of good faith and fair dealing), and count seven (unjust enrichment) of plaintiff's proposed amended complaint.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to file a first amended complaint (Dkt. # 40) to "add . . . Schlabach, on [a] theory of personal liability for all counts," id. at 1, is **granted** as to count one (Lanham Act trademark infringement), count two (Lanham Act unfair competition), count three (common law unfair competition), and count four (common law trademark infringement) of plaintiff's proposed amended complaint, and **denied** as to count five (breach of contract), count six (breach of implied covenant of good faith and fair dealing), and count seven (unjust enrichment) of plaintiff's proposed amended complaint.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint in accordance with this opinion and order no later than **December 15, 2017.**

**IT IS FURTHER ORDERED** that defendant's request that the Court impose costs on plaintiff as a condition of granting leave to amend is **denied**.

**DATED** this 13th day of December, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE